# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JPMORGAN CHASE BANK, N.A.,

    Plaintiff,

    v.

MICHEL L. MULLEN, *et al.*,

    Defendants.

Case No. 2:16-cv-426
JUDGE GEORGE C. SMITH
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court upon the cross-motions for summary judgment of Defendants Michel L. Mullen and BJ 400XP, Inc. ("Defendants' Motion for Summary Judgment") (Doc. 56) and Plaintiff JPMorgan Chase Bank, N.A. ("Chase's Motion for Summary Judgment") (Doc. 57). Defendants have also requested oral arguments on both motions. (Doc. 70). The motions are fully briefed and ripe for disposition. For the following reasons, Defendants' Motion for Summary Judgment is **DENIED** and Chase's Motion for Summary Judgment is **GRANTED**. Further, as the Court does not find the legal or factual issues implicated by the motions are such that oral argument would aid the Court in its decision, Defendants' request for oral argument is **DENIED**.

### I.     BACKGROUND

On April 19, 2007, Defendant BJ 400XP, Inc. (a Nevada corporation doing business in Texas) executed a Business Purpose Promissory Note (the "Note") in the principal amount of $7,806,000.00 in favor of a predecessor in interest to Plaintiff JPMorgan Chase Bank, N.A.

("Chase").[1] (Doc. 59-3, Note). The Note financed BJ 400XP's purchase of a Raytheon Aircraft Company Model 800XP private jet aircraft. (Doc. 56-1, Michel Mullen Dec. ¶ 3). The Note required 19 quarterly installment payments of $72,172.50 beginning on August 1, 2007, followed by a final balloon maturity payment of $6,434,722.50 on May 1, 2012. (Doc. 59-3, Note § 3).

As security for BJ 400XP's obligations under the Note, BJ 400XP and Chase entered into a Loan and Security Agreement dated April 19, 2007 (the "Loan Agreement"), which provided Chase a security interest in the jet. (Doc. 59-4, Loan Agreement § 1). Additionally, Defendant Michel Mullen executed a Continuing Guaranty dated April 19, 2007 (the "Guaranty"), under which Michel "unconditionally guarantee[d]" all of BJ 400XP's obligations under the Note and Loan Agreement. (Doc. 59-5, Guaranty § 1).

BJ 400XP made all required payments under the Note and Loan Agreement through May 1, 2009, but missed its next two quarterly payments due on August 1, 2009, and November 1, 2009. (Doc. 56-1, Mullen Dec. ¶ 9). Chase, BJ 400XP, and Mullen entered into a Forbearance Agreement dated January 29, 2010 (the "Original Forbearance Agreement" or "OFA") under which BJ 400XP and Mullen agreed to certain modified payment terms and Chase agreed not to exercise its remedies under the Note and Loan Agreement until a "Standstill Termination" occurred. (Doc. 59-11, OFA § 3). The OFA also required BJ 400XP to establish two pledged accounts with certain funding minimums. (*Id.* § 4(b)–(c)).

BJ 400XP again missed installment payments due under the Note on November 1, 2010 and February 1, 2011, and also did not make a principal paydown required by the OFA on November 1, 2010. (Doc. 56-1, Mullen Dec. ¶ 11). These further events of default prompted the

---

[1] The Note was originally made in favor of Chase Equipment Leasing Inc., an Ohio Corporation. In 2009, Chase Equipment Leasing Inc. changed its name to Chase Equipment Finance, Inc. (Doc. 57-1, Donna K. Morris Dec. ¶ 5). In 2011, Chase Equipment Finance, Inc. was merged into Plaintiff JPMorgan Chase Bank, N.A. (*Id.*). Defendants do not contest Chase's ownership of the note at any relevant time.

parties to execute a Modified Forbearance Agreement ("MFA") on January 26, 2011. (Doc. 59-13, MFA; Doc. 59, Mullen Dep. at 68:16-69:2). In the MFA, Chase again agreed not to exercise remedies available under the Loan Agreement until a new Standstill Termination occurred. (Doc. 59-13, MFA § 3). In exchange, Defendants agreed to several payment conditions and inspections of and repairs to the jet. (*Id*. § 4).

At some point following the execution of MFA, the parties executed an undated Amendment to Modified Forbearance Agreement, permitting BJ 400XP to withdraw certain amounts from the pledged accounts established pursuant to the OFA. (Doc. 59-15). This first Amendment to Modified Forbearance Agreement is not relevant to the case at bar, but on April 30, 2012,[2] the parties executed a Second Amendment to Modified Forbearance Agreement ("SAMFA") providing that: (a) BJ 400XP "shall immediately pay to Lender the amount of $1,000,000.00 to be applied to the principal balance of the Note"; (b) the balance of all amounts due under the Loan Documents[3] shall be paid to Chase upon the sale of Millennium Offshore Service, LLC by Mullen; and (c) the Standstill Period of the MFA "shall terminate on March 31, 2013." (Doc. 59-22, SAMFA §§ 1, 3).

BJ 400XP continued to have problems fulfilling its obligations to Chase. It missed further installment payments required by the Note on May 1, 2011 and February 1, 2012 (Doc. 56-1, Mullen Dec. ¶ 19). It also failed to make the principal paydown required by the MFA on March 31, 2012. (*Id.*). Further, BJ 400XP filed for bankruptcy on February 1, 2012, triggering an event of default as provided by the Loan Agreement. (Doc. 59-4, Loan Agreement § 12(f)).[4] Finally,

---

[2] Although the SAMFA is dated March 30, 2012 on its face, the parties agree that it was not actually executed until April 30, 2012.
[3] The MFA defines "Loan Documents" such that the term includes, *inter alia*, the Note, Loan Agreement, Guaranty, OFA, MFA, and SAMFA.
[4] BJ 400XP's bankruptcy case was voluntarily dismissed on June 18, 2013. (Doc. 57-5, Order).

Defendants allege that BJ 400XP failed to comply with the SAMFA when it did not make the required $1,000,000 payment until May 15, 2012, rather than "immediately" as required by the April 30, 2012 SAMFA, although Chase does not appear to have treated this payment as in default at any time. (Doc. 56-1, Mullen Dec. ¶ 18).

Unsurprisingly, BJ 400XP did not make the final balloon payment required under the Note on May 1, 2012, and, as of March 31, 2013 (the termination of the Standstill Period under the SAMFA), Mullen had not yet sold Millennium Offshore Services, LLC. The parties engaged in discussions regarding a possible restructuring of the loan, but never reached agreement on the terms for further forbearance. On April 29, 2016, Chase sent Defendants a demand letter requiring payment by May 9, 2016, failing which Chase would, *inter alia*, sue to collect overdue sums with interest. (Doc. 56-20, Demand Letter). Defendants did not make any payments by the demand date, and Chase commenced the present action on May 12, 2016, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1, Compl.).

The parties have now filed cross-motions for summary judgment. Defendants' sole argument against liability is that Chase's claims are barred by Texas's four-year statute of limitations, which Ohio would borrow under Ohio Rev. Code. § 2305.03.

## II. STANDARD OF REVIEW

The parties each move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury

could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

That the parties have filed cross-motions for summary judgment does not alter the Court's standard of review. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he

standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## III. ANALYSIS

**A.  Chase has established that Defendants owe the damages sought.**

The Loan Documents demonstrate that Chase agreed to provide financing to BJ 400XP for the purchase of a jet; that BJ 400XP agreed in exchange to make certain payments to Chase; and that Mullen unconditionally guaranteed BJ 400XP's payment obligations to Chase. Chase satisfied all conditions necessary to enforce the Loan Documents when it provided the financing in 2007, and BJ 400XP has failed to make several required payments. As a result, Chase is entitled to demand from Defendants all principal and interest as provided by the Loan Documents, which Chase documents in the amount of $5,596,846.89 in principal, $2,660.28 in interest at the Note rate through May 8, 2016, interest at the Overdue Rate (18% per annum) from May 9, 2016 through April 30, 2018 in the amount of $1,995,275.92, plus interest at the Overdue Rate from and after May 1, 2018 until paid. (Doc. 57-1, Morris Dec. ¶ 19; Doc. 57-2, Loan History). Defendants have not disputed these amounts. Therefore, barring any successful defense, Chase is entitled to summary judgment in this amount. Chase also intends to move for attorney's fees and costs as provided by the Loan Documents following entry of summary judgment in its favor on the principal and interest amounts.

**B.     Chase is entitled to summary judgment on Defendants' statute of limitations defense.**

Defendants do not contest that they are in default under the Loan Documents or that they would owe the money sought by Chase in a timely action. Defendants' sole asserted defense is that Chase's claims are barred by Texas's four-year statute of limitations, made applicable by Ohio's borrowing statute. However, for the following reasons, the Court concludes that Chase's claims are governed by Ohio's six-year statute of limitations, making Chase's claims timely.

**1.     Chase's claims accrued in Ohio, making Ohio's six-year limitation period applicable.**

This Court has subject-matter jurisdiction over Chase's claims based on diversity of citizenship. "It is well-established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.1998). Ohio follows the Restatement (Second) of Conflicts of Laws, which provides that the limitations period of the forum will govern the action. *Id.*; Restatement (Second) § 142. In Ohio, an action to enforce payment obligations on a note payable at a definite time "shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." Ohio Rev. Code § 1303.16(A).

Defendants contend, however, that Ohio's borrowing statute changes this result. The borrowing statute provides:

> No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code § 2305.03. Defendants argue that Chase's claims accrued in Texas, where Defendants are citizens, where certain loan documents were negotiated, and where a pledged account established pursuant to the loan documents was located. Texas law provides for a four-

7

year statute of limitations for suits on debt, meaning that at least some of Chase's claims may be barred if the Texas statute of limitations is borrowed via Ohio Rev. Code § 2305.03. Tex. Civ. Prac. & Rem. Code § 16.004(a)(3).

The crucial question, then, is where Chase's cause of action accrued. The Ohio Supreme Court has provided a clear answer: An action for collection of a debt accrues "where the debt was to be paid and where Chase suffered its loss." *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St. 3d 627, 2016-Ohio-3444, 72 N.E.3d 573, ¶ 42. Accordingly, most of the considerations raised by Defendants (such as their place of residence or citizenship and where the loan documents were negotiated) are irrelevant.

The Note provides that BJ 400XP is to make payments under the loan "at Lender's principal office or at such other place as Lender may designate from time to time." (Doc. 59-3, Note at 1).[5] Chase's principal office is undisputedly located in Ohio. (Doc. 57-1, Morris Dec. ¶ 3). And despite their arguments to the contrary, Defendants have not offered evidence that Chase directed that any of the payments in default be made anywhere other than its principal office.

It is true that the Original Forbearance Agreement required the establishment of a pledged account, held at Chase, which was required to be funded at certain levels throughout the period of forbearance. This account may have been located in Texas, although the parties dispute that point. However, Chase directed only that certain funding payments be made to this account. (*See* Doc. 59-11, OFA § 4(b) (by February 28, 2010, BJ 400XP shall pledge to Chase a deposit account of at least $250,000); *id.* § 4(c) (by May 31, 2010, BJ 400XP shall pledge to Chase an additional deposit

---

[5] Defendants' argument that this clause is inoperative as of 2011, because the original noteholder, Chase Equipment Leasing, Inc. ceased to exist at that time, is unavailing. Although "Lender" is defined in the Note as "Chase Equipment Leasing Inc.," this entity changed its name to Chase Equipment Finance, Inc. and was merged into Plaintiff JPMorgan Chase Bank, N.A on June 11, 2011. (Doc. 57-1, Donna K. Morris Dec. ¶ 5). Defendants do not challenge Chase's ownership of the note or the validity of the name change or merger. The only reasonable interpretation of the Note following the merger is that "Lender" now refers to Plaintiff JPMorgan Chase Bank, N.A.

8

account of at least $250,000); MFA § 4(c) (by April 28, 2011, BJ 400XP shall bring the pledged account's balance to at least $500,000)). And neither Chase nor Defendants contend that any of these funding payments to the pledged account were not made. That is, none of these payments were ever in default, so that even if the pledged account was located in Texas, Chase suffered no loss and accrued no cause of action there.

Rather, Defendants assert only that the following defaults caused Chase's cause of action to accrue:

- The missed installment payments in August 1, 2009 and November 1, 2009 required by the Note (the "Original Event of Default" underlying the OFA);

- The missed installment payments on November 1, 2010 and February 1, 2011 required by the Note, as well as the failure to make the principal paydown required by November 1, 2010 under the OFA (the "Forbearance Event of Default" underlying the MFA);

- The missed installment payments on May 1, 2011, and February 1, 2012 required by the Note;

- BJ 400XP's bankruptcy filing on February 1, 2012;

- The missed principal paydown on March 31, 2012 required by the MFA;

- The $1,000,000 payment due May 10, 2012 required by the SAMFA that was not made until May 15, 2012; and

- The missed balloon maturity payment due May 1, 2012 required by the Note.

(*See* Doc. 56, Defs.' Mot. at 23–28; Doc. 67, Defs.' Resp. to Chase's Mot. at 27–28). Defendants have not offered any evidence that Chase ever directed these defaulted payments, or any accelerated payment that may have become due as a result of these defaults, to be made anywhere other than its principal office.[6] Thus, to the extent that any of these missed payments caused Chase's claims to accrue, the loss from the missed payments was felt by Chase at its principal

---

[6] As the proponent of the affirmative statute of limitations defense, it is Defendants' burden to direct the Court to such evidence. *Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

office in Ohio and the claims accrued in Ohio under *Taylor*.[7] Because Chase's claims accrued in Ohio, the borrowing statute has no application and Ohio's six-year limitation period governs this action.[8]

### 2. All of Chase's claims accrued within Ohio's six-year limitation period.

Chase filed its Complaint on May 12, 2016. (Doc. 1, Compl.). Accordingly, its claims are timely to the extent they accrued no earlier than May 12, 2010.

The only defaults to occur outside that period were the first missed installments on August 1, 2009 and November 1, 2009. However, the OFA executed on January 29, 2010 required Chase to forbear from exercising its rights arising from those defaults until the termination of a "Standstill Period." (Doc. 59-11, OFA § 3). This means the limitations period on the August 1, 2009 missed installment ran for only 181 days, and on the November 1, 2009 missed installment ran for only 89 days, before being reset by the OFA. And the OFA permitted Chase "to act on the [August 1, 2009 and November 1, 2009 missed installments] after the occurrence of a Standstill Termination as if such default had just occurred." (*Id.* § 7). The evidence before the Court does not demonstrate an end to the Standstill period until November 1, 2010 when BJ 400XP missed another installment under the Note. (*See id.* § 6 (Standstill Period shall terminate, *inter alia*, when another event of default under the Loan Documents occurs)). Thus, the effective accrual date for the August 1, 2009 and November 1, 2009 missed installments is no earlier than November 1, 2010, which is within Ohio's six-year limitation period.

---

[7] The Court acknowledges that the $1,000,000 payment due on May 10, 2012 and made on May 15, 2012 was made via a deposit by BJ 400XP into the pledged account, from which Chase withdrew $1,000,000 into its own account on May 18, 2012. However, Defendants have not offered any evidence that Chase directed that payment be made via the pledged account or that Chase would have felt the loss anywhere other than Ohio had Chase treated the late payment as in default.

[8] The parties make several arguments in their briefs that are relevant only if Texas's four-year limitation period applies. Because the Court finds Ohio's six-year limitation period applicable, the Court need not and does not resolve these arguments.

Because all relevant events of default resulted in causes of action that accrued within Ohio's six-year limitation period, Chase's claims are timely. And because Chase has demonstrated its entitlement to summary judgment on its claims, and Defendants assert no defense to liability other than the limitation period, Chase is entitled to all the relief it seeks.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED** and Chase's Motion for Summary Judgment is **GRANTED**. Defendants' request for oral argument is **DENIED**.

The Clerk shall enter judgment in favor of Plaintiff JPMorgan Chase Bank, N.A. in the amount of **$5,596,846.89 in principal, $2,660.28 in interest at the Note rate through May 8, 2016, interest at the Overdue Rate from May 9, 2016 through April 30, 2018 in the amount of $1,995,275.92, plus interest at the Overdue Rate (18% per annum) from and after May 1, 2018 until paid**. The Clerk shall remove Documents 56, 57, and 70 from the Court's pending motions list. This case shall remain open pending resolution of Chase's forthcoming motion for attorney's fees. Chase shall file its motion for attorney's fees no later than **March 15, 2019**.

**IT IS SO ORDERED.**

　*/s/ George C. Smith*　　　　　　
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**